IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Collie T. Ellerbe, Jr., ) | |
| ) | Civil Action No. 6:04-23418-HMH-WMC |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| United States of America, ) | |
| Thomas Martin and R. Wallace, ) | |
| ) | |
| Defendant. ) | |
| ) | |

The plaintiff, a federal prisoner who is proceeding *pro se*, seeks relief pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(A) and Local Civil Rule 73.02(B)(2)(e) D.S.C., all pretrial matters in cases involving *pro se* litigants are referred to a United States Magistrate Judge for consideration.

The plaintiff filed his complaint on December 29, 2004, alleging that the defendants violated his constitutional rights while he was incarcerated at the Federal Correctional Institution, Estill, South Carolina ("FCI Estill").  The plaintiff filed an amended complaint on December 12, 2005, adding claims under the Federal Tort Claims Act and adding inmate David Keno and the United States as defendants.  On May 11, 2006, the Honorable Henry M. Herlong, Jr., United States District Judge, granted the motion to dismiss of defendants Warden Gerald Maldonado, Warden Matthew Hamidullah, Officer Thomas Martin, and Officer R. Wallace in all respects except as to the claims against Martin and Wallace in their individual capacities.  On March 29, 2007, Judge Herlong dismissed Keno as a defendant for lack of service.  Accordingly, the only remaining claims are those against the United States, and Martin and Wallace in their individual capacities.

On June 5, 2007, the United States, Martin, and Wallace filed a motion for summary judgment. By order filed on June 6, 2007, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the summary judgment dismissal procedure and the possible consequences if he failed to adequately respond to the motion. After receiving several extensions, the plaintiff filed his opposition to the motion for summary judgment on September 10, 2007.

## **FACTS PRESENTED**

The plaintiff is currently incarcerated at the Federal Correctional Institution, Bennettsville, South Carolina ("FCI Bennettsville"). He alleges that on August 19, 2003, he was placed in the Special Housing Unit ("SHU") at FCI Estill pending investigation of an incident involving the plaintiff and fellow inmate Davie Keno fighting with each other. Keno was also placed in the SHU. On September 3, 2003, the plaintiff appeared before the Disciplinary Hearing Officer ("DHO") and was found guilty of fighting. The DHO gave the plaintiff 15 days disciplinary segregation and recommended the disallowance of 14 days of good time. Inmate Keno and the plaintiff admitted to fighting with each other, and both indicated that they could be returned to the general population without problems (amended comp., att. B at 6).

The plaintiff alleges that on September 8, 2003, defendant Officer R. Wallace assigned the plaintiff, the plaintiff's cellmate, Keno, and Keno's cellmate to the same recreation area. According to the plaintiff, he and his cellmate were handcuffed behind their backs, Keno's cellmate was handcuffed behind his back, but Keno was handcuffed in front. The plaintiff claims he asked defendant Officer Thomas Martin, "What are you doing," to which Martin replied, "You'll be all right."

A video of the incident shows that on September 8, 2003, at approximately 8:32 a.m., the plaintiff and his cellmate were placed in a recreation area in the FCI Estill

2

SHU. (def. m.s.j., ex. A, att. 1). Both the plaintiff and his cellmate were restrained, with their hands behind their backs. Inmate Keno and his cellmate were escorted to the recreation area at 8:33 a.m. Both inmate Keno and his cellmate were restrained with their hands behind their backs. These two inmates were placed in the same recreation area with plaintiff and his cellmate. At least three Bureau of Prisons staff were present outside the recreation area when inmate Keno and his cellmate are placed in the recreation area with the plaintiff and his cellmate. Thereafter, there was an institution emergency call, and the staff in the recreation area left to respond. While the staff were not present, the plaintiff and inmate Keno squared off and began to advance on each other. Both inmates were restrained with their hands behind their backs. Sometime between 8:33:56 and 8:35:17, inmate Keno slipped his cuffs from behind his back to the front of his body. Inmate Keno advanced on the plaintiff, who backed away from him. Inmate Keno grabbed the plaintiff and, after a struggle, threw him to the ground. At 8:35:35, the plaintiff sat up. At 8:35:38, inmate Keno appeared to strike the plaintiff. Thereafter, the plaintiff fell to the ground and appeared motionless. Inmate Keno and the other inmates stepped away from the plaintiff at 8:35:50. Inmate Keno attempted to step back toward the plaintiff, but the other inmates blocked his access to plaintiff (def. m.s.j., ex. A, att. 1).

      The video of the incident shows that at 8:36:06, an officer stood at the recreation area door, trying to ascertain the situation. A moment later, defendant R. Wallace entered the recreation area escorting an inmate. Defendant Wallace placed this inmate on the wall to be supervised by another staff member, while he unlocked the recreation area door and removed inmate Keno from the area. Several other staff responded to the recreation area, due to a call for assistance from that unit. The two other inmates were removed from the recreation area. The plaintiff received a medical assessment and was able to stand and ambulate (def. m.s.j., ex. A, att.1). He was escorted from the area to medical services, where he was examined and treated for his injuries. The

plaintiff suffered two lacerations to the head that required sutures to close. X-rays were taken which revealed no cranial fractures. The plaintiff's stitches were removed without incident on September 19, 2003 (def. m.s.j., ex. B, C, D).

The plaintiff claims that he was beaten "to unconsciousness." He claims that he "suffered severe pain and emotional trauma as a direct result of the assault" (am. comp. 3-6). The plaintiff alleges that the defendants acted with deliberate indifference in handcuffing Keno in front and placing him in the recreation area with the plaintiff when they knew the plaintiff and Keno had been placed in the SHU for fighting each other. The plaintiff seeks damages for the alleged constitutional violations (am. comp. 20). Defendant Martin is currently serving in the military on active duty and is not expected to return to the Bureau of Prisons until at least August 2008 (def. m.s.j., ex. A).

## APPLICABLE LAW

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Accordingly, to prevail on a motion for summary judgment, the movant must demonstrate that: (1) there is no genuine issue as to any material fact; and (2) that he is entitled to summary judgment as a matter of law. As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining

whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist which give rise to a genuine issue. *Id.* at 324. Under this standard, the existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985), *overruled on other grounds,* 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248. Accordingly, when Rule 56(e) has shifted the burden of proof to the non-movant, he must provide existence of every element essential to his action which he bears the burden of adducing at a trial on the merits.

## ANALYSIS

In his amended complaint, the plaintiff named the United States as a defendant. At least a portion of this claim is brought pursuant to *Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 396-97 (1971). In *Bivens*, the Supreme Court provided a remedy for money damages against individual federal agents for violation of a plaintiff's constitutional rights. *Id.* A *Bivens* claim cannot be

brought against a federal agency such as the BOP, *see FDIC v. Meyer*, 510 U.S. 471, 484-86 (1994), or the United States. *See Randall v. United States*, 95 F.3d 339, 345 (4th Cir.1996). As such, all *Bivens* claims against the United States should be dismissed.

The plaintiff alleges that the defendants failed to provide for his reasonable safety and that this failure constituted cruel and unusual punishment, violating the Eighth Amendment to the United States Constitution. Deliberate indifference to an inmate's safety needs is actionable under Section 1983. *Farmer v. Brennan*, 511 U.S. 825, 832-33 (1994) (prison officials have duty to protect prisoners from violence "at the hands of other prisoners") (brought under *Bivens*, 403 U.S. 388). *See also Benefield v. McDowall*, 241 F.3d 1267, 1271-72 (10th Cir. 2001) (inmate does not have to wait until he or she is actually assaulted before obtaining relief) (citing *Woodhous v. Virginia*, 487 F.2d 889, 890) (4th Cir. 1973)("A prisoner has a right, secured by the eighth and fourteenth amendments, to be reasonably protected from constant threat of violence and sexual assault by his fellow inmates, and he need not wait until he is actually assaulted to obtain relief."));[1] *Miltier v. Beorn*, 896 F.2d 848, 851-852 (4th Cir. 1990) ("A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position.").

The Eighth Amendment expressly prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To succeed on any Eighth Amendment claim for cruel and unusual punishment, a prisoner must prove: (1) objectively, the deprivation of a

---

[1] At the time *Woodhous* was decided, inmate attacks were evaluated under a negligence standard. Although the negligence standard for Section 1983 actions was superannuated by later caselaw, *Woodhous* is still good law on the issue of inmate attacks. *See Gilland v. Owens*, 718 F. Supp. 665 (W.D.Tenn.1989). In *Gilland*, the court stated:

> *Woodhous* applies a negligence standard to the conduct of officials in protecting inmates from assault or the threat of assault. While this aspect of *Woodhous* no longer correctly represents the law in this circuit, *see McGhee v. Foltz,* 852 F.2d 876, 881 (6th Cir.1988), its holding that an inmate has a right to be free from constant threat of violence is still an accurate statement of the law.

*Gilland v. Owens*, 718 F.Supp. at 686 n.13.

6

basic human need was sufficiently serious, and (2) subjectively, the prison officials acted with a "sufficiently culpable state of mind." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991); *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996). "'[I]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.'" *Moore v. Winebrenner*, 927 F.2d 1312, 1316 (4th Cir. 1991) (quoting *Whitley v. Albers,* 475 U.S. 312, 319 (1986)).

The plaintiff alleges that defendant correctional officers Martin and Wallace placed him in the recreation area with fellow inmate Keno, with whom he had a previous fight. He claims his hands were handcuffed behind his back, while Keno's hands were handcuffed in front. The plaintiff claims that he asked defendant Martin why he was placing them together, to which Martin replied, "You'll be all right." The plaintiff further claims that the defendant officers left the inmates for approximately 10 minutes during an institution emergency call and, during that time, Keno assaulted the plaintiff and beat him to unconsciousness.

The plaintiff has come forward with no evidence supporting his version of the incident. However, review of the video submitted by the defendants demonstrates that plaintiff's allegations in counts five, seven, and eleven are patently false. In each of those counts, the plaintiff claims that inmate Keno was restrained with his hands in front of his body when he was placed in the recreation area with the plaintiff (am. comp.). However, the video clearly demonstrates that is not true (def. m.s.j., ex. A, att. 1, at 8:32:28 - 8:33:25). All of the inmates were restrained with their hands behind their bodies. It is only after the staff leave the area to respond to the emergency that inmate Keno slipped his cuffs from the back to the front and began to advance on the plaintiff (*id.* at 8:33:56 - 8:35:20). Similarly, the plaintiff offers no support for his allegation in count eight that Officer Wallace

was the one who placed Keno in the cell with him. As noted in his declaration, Officer Wallace explains that he did not assign the recreation cells that day, nor did he place inmate Keno in the cell with plaintiff (def. m.s.j., ex. E, Wallace decl.). He was one of the first staff who responded to the recreation area when inmate Keno assaulted plaintiff, and he removed inmate Keno from the cell (*id.*; def. m.s.j., ex. A, att.1, at 8:36:06 - 8:36:11). The plaintiff's arguments concerning deliberate indifference are premised on his statement that inmate Keno was placed in the recreation area with his hands in front of him. Review of the video reveals that this premise is false (def. m.s.j., ex. A, att.1, at 8:33:18 - 8:33:46). Further, the video demonstrates that the incident occurred very quickly. Inmate Keno was placed in the recreation area, with his hands cuffed behind his back, at 8:34. He slipped his cuffs and struck plaintiff within the next minute. Bureau staff responded and removed inmate Keno from the recreation area less than one minute later, and the entire incident lasted approximately three minutes.

The plaintiff also alleges that when Officer Martin placed Keno in the recreation area, he asked Martin what he was doing, to which Martin replied, "You'll be all right" (am. comp. at 20). The evidence shows that the inmates all had their hands cuffed behind their backs, and they were placed in the same recreation area for only a few minutes while the staff responded to an emergency call. Further, the defendants have presented evidence that both the plaintiff and Keno had stated to prison officials only days before that there would be no further trouble between them. As argued by the defendants, allegations of negligence do not rise to the level of a constitutional claim. The plaintiff has failed to show that, objectively, the deprivation of a basic human need was sufficiently serious, and, subjectively, the prison officials acted with a "sufficiently culpable state of mind." Accordingly the Eighth Amendment claim fails.

To the extent this is a claim under the Federal Tort Claims Act ("FTCA"), the proper defendant is the United States. *See* 28 U.S.C. §2674 ("The United States shall be

liable, ... relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances."). Title 28, United States Code, Section 1346(b), vests jurisdiction over FTCA claims in the district courts, but only "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." *Id.* §1346(b). In South Carolina, "[t]o establish a cause of action in negligence, a plaintiff must prove the following three elements: (1) a duty of care owed by defendant to plaintiff; (2) breach of that duty by a negligent act or omission; and (3) damage proximately resulting from the breach of duty." *Bloom v. Ravoira*, 529 S.E.2d 710, 712 (S.C. 2000).

An affirmative legal duty exists only if created by statute, contract, relationship, status, property interest, or some other special circumstance. *Rayfield v. South Carolina Department of Corrections*, 374 S.E.2d 910, 913 (S.C. Ct. App. 1988). In addition, in order to show that a defendant owes a duty of care arising from a statute, the plaintiff must show two things: (1) that the essential purpose of the statute is to protect from the kind of harm the plaintiff has suffered; and (2) that he is a member of the class of persons the statute is intended to protect. *Id.* at 914. In the federal prison context, the duty of care owed by the Bureau of Prisons to federal prisoners ultimately is fixed by 18 U.S.C. § 4042, independent of an inconsistent state rule. *United States v. Muniz*, 374 U.S. 150, 164-65 (1963). Pursuant to Section 4042, prison officials have a specific duty to protect inmates placed in their care. The duty owed under Section 4042 is that of "reasonable care." *See Johnson v. U.S. Government*, 258 F.Supp. 372, 376 (D. Va.1966) (Prison officials duty to keep prisoners entrusted to their care and custody safe is not absolute but only requires exercise of ordinary diligence under the circumstances.). A breach of duty exists when it is foreseeable that one's conduct may likely injure the person to whom the duty is owed. *Horne v. Beason*, 331 S.E.2d 342, 344 (S.C. 1985). The damages allegedly sustained

9

must be shown to have been proximately caused, i.e. causally connected, to the breach of duty in order to warrant a recovery. *Id*.

Here, the evidence shows that Officer Martin ensured that inmate Keno was in hand restraints prior to placing him in the recreation area with plaintiff. There was no reason for Officer Martin to believe that inmate Keno would slip his cuffs and assault the plaintiff. There is no evidence to suggest that Officer Martin intended for any harm to come to the plaintiff. Instead, the facts demonstrate that Officer Martin acted with reasonable care to protect the plaintiff. Furthermore, there is no evidence that the United States negligently supervised Officers Martin and Wallace. Based upon the foregoing, the FTCA claims fail.

## **CONCLUSION AND RECOMMENDATION**

Based upon the foregoing, this court recommends that the defendants' motion for summary judgment be granted.

s/William M. Catoe
United States Magistrate Judge

October 30, 2007

Greenville, South Carolina